## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW M MEXICO

**MARYLOU ARAGON,**

      **Plaintiff,**

    **vs.**                                     **Civ. No. 12-1114 ACT**

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration,**

      **Defendant.**

### MEMORANDUM OPINION AND ORDER

    **THIS MATTER** comes before the Court on the Motion to Reverse or Remand for a Rehearing With Supporting Memorandum ("Motion") of the Plaintiff Marylou Aragon ("Plaintiff"), filed May 5, 2013 [Doc. 20].  On July 3, 2013, the Commissioner of Social Security ("Defendant") filed a Response [Doc. No. 21], and Plaintiff filed a Reply on July 18, 2013 [Doc. No. 22].  Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that Plaintiff's Motion is not well taken and will be **DENIED**.

### PROCEDURAL RECORD

    On December 21, 2009, Plaintiff filed an application for Supplemental Security Income ("SSI") under Title  XVI of the Social Security Act, 42 U.S.C. § 1382(a)(3).  [Tr. 137-142.] Plaintiff alleges a disability beginning December 3, 2009, due to fibromyalgia, post traumatic stress disorder and severe depression.  [Tr. 152.]  Plaintiff's application was initially denied on May 10, 2010, and denied again at the reconsideration level on July 12, 2010.  [Tr.  84, 85.]

The ALJ conducted a hearing on March 9, 2011. [Tr. 22-78.]  At the hearing, Plaintiff was represented by Attorney Ione E. Gutierrez.[1]  On July 6, 2011, the ALJ issued an unfavorable decision. [Tr. 6-18.]  In her report, the ALJ found that since December 3, 2009, the Plaintiff had the following severe impairments: depression, post traumatic stress disorder (PTSD), and knee pain.  [Tr. 11.]  However, the ALJ concluded that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [Tr. 12.]  The ALJ also found that:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she requires alternate sit and stand option every 30 minutes, no public contact, superficial contact with co-workers and no work around hazardous machinery.

[Tr. 13.]  The ALJ concluded that Plaintiff is unable to perform any past relevant work, but considering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. [Tr. 16.]

On August 30, 2012, the Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ. [Tr. 1-3.] On October 26, 2012, the Plaintiff filed her Complaint for judicial review of the ALJ's decision. [Doc. 1.]

Plaintiff was born on May 29, 1962. [Tr. 137.]  The Plaintiff completed her GED in 1981. [Tr. 153.] She completed specialized training as a receptionist in 1980. [Id.]  Plaintiff has work experience as a cashier and a child care worker. [Tr. 154.]  Plaintiff has not engaged in any substantial gainful activity since her alleged onset date of December 3, 2009. [Tr. 11.]

---

[1]   Plaintiff is currently represented by Attorney Sarah L. Maestas Barnes .

## STANDARD OF REVIEW

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision was supported by substantial evidence; and second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208,

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(C). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform. *See Dikeman v. Halter*, 245 F.3d 1182, 1183 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

1214 (10ᵗʰ Cir. 2004) (quotation omitted).  Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id.*  The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id.* (quoting *Washington v. Shalala*, 37 F.3d 1437, 1439 (10ᵗʰ Cir. 1994)).  The court "may neither reweigh the evidence nor substitute" its opinion for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214 (quotation omitted).

## MEDICAL HISTORY

Plaintiff alleges a disability beginning December 3, 2009, due to fibromyalgia, post traumatic stress disorder and severe depression.  [Tr. 152.]  Plaintiff reported to Social Security that she stopped working because of her conditions.  [Tr. 152.]

### A.    UNM Behavioral Health - Mark Milos Luley, D.O.

On September 14, 2009, Plaintiff presented to UNM Behavioral Health with complaints of a verbally abusive husband and depression. [Tr. 277.] Plaintiff reported a past medical history that included menopause, restless leg syndrome and insomnia. [Tr. 278.] Her current medications were Neurontin[3] and Trazodone.[4]  DO Mark Luley performed a psychiatric review, mental status examination, and multiaxial assessment. [Tr. 279.] DO Luley assessed Plaintiff as follows:

---

[3]  Neurontin (gabapentin) is an anti-epileptic medication, also called an anticonvulsant. It affects chemicals and nerves in the body that are involved in the cause of seizures and some types of pain. http://www.drugs.com/neurontin.html.

[4]  Trazodone is an antidepressant medicine.  Trazodone is used to treat major depressive disorder. http://www.drugs.com/trazodone.html

| Axis I: | Major depression, single episode, severe, without psychotic features; posttraumatic stress disorder |
|---|---|
| Axis II: | Deferred |
| Axis III: | Menopause, restless leg syndrome |
| Axis IV: | Family, social, primary support |
| Axis V: | Current GAF: 50[5] |

[Tr. 279.]  DO Luley prescribed Zoloft[6] and advised Plaintiff to follow up with her primary care physician. [Id.]

### B.      First Choice Community Healthcare - Maryalyse Adams Mercado, M.D.

Plaintiff's records from First Choice Community Healthcare are dated from June 25, 2009, through March 25, 2011. [Tr. 200-210, 214, 255-256, 260, 284, 289-291.]  Plaintiff presented to First Choice Community Healthcare with complaints of pain, fatigue and depression on October 30, 2009, November 30, 2009, January 25, 2010, April 4, 2010,  June 11, 2010, August 27, 2010, October 19, 2010, November 15, 2010, and March 25, 2011. [Tr. 201, 205, 207, 255, 260, 289-281.]  Plaintiff reported pain in the back of her neck, shoulders, arms, back of thighs, right buttock, and down her right leg.  [Id.]  Plaintiff was followed by Dr. Maryalyse Mercado, who noted on October 30, 2009, that fibromyalgia[7] is likely given Plaintiff's

---

[5] Individuals with a GAF between 41 and 50 have serious symptoms (*e.g*., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g*., no friends, unable to keep a job).

[6] Sertraline (Zoloft)  is an antidepressant.  http://www.drugs.com/sertraline.html.

[7] Fibromyalgia is inflammation of the fibrous and connective tissue, causing long-term but variable levels of muscle and joint pain, stiffness, and fatigue.  Diagnosis is usually made after eliminating other conditions, as there are no confirming diagnostic tests.  According to the ACR's 1990 standards, fibromyalgia is diagnosed based on widespread pain with tenderness in at least eleven of eighteen sites known as trigger points.  *Brosnahan v. Barnhart*, 336 f.3d 671, 672, n. 1 (8th Cir. 2003)(citing Jeffrey Larson, *Fibromyalgia*, in 2 *The Gale Encyclopedia of Medicine* 326-27 (Jacqueline L. Longe et al. eds., 2d ed. 2002)).

symptoms, and that her pain is "certainly exacerbated by depression." [Tr. 207.] In spite of her

complaints of pain, Plaintiff's rheumatoid arthritis labs and inflammation tests were normal, and

each of Plaintiff's exams were normal, except for obesity. [Tr. 201, 205, 207, 216.]  Dr. Mercado

first prescribed Nortriptyline[8] 25 mg. and advised  Plaintiff to continue taking Sertraline (Zoloft).

[Id.]  Thereafter Plaintiff's medications were changed with some frequency in an attempt to help

her depression, insomnia and pain.  Her medications included Temazepam,[9] Neurontin,

Ibuprofen, Amitriptyline,[10] Vicodin,[11] Fluoxetine[12] (Prozac), Cymbalta[13] and Effexor.[14]  In

addition to medication, Plaintiff was referred for counseling and to the pain management clinic.

[Tr. 204, 207, 209, 284, 289, 290.]

On November 30, 2009, Dr. Mercado advised Plaintiff that she could not complete

disability papers on Plaintiff's behalf nor state that she cannot work. [Tr. 205.] When asked by

the Center for Disability for more information regarding objective findings to support Plaintiff's

alleged disability due to fibromyalgia, First Choice Community Healthcare advised the Center

---

[8]  Nortriptyline is a tricyclic antidepressant.  Nortriptyline is used to treat symptoms of depression. http://www.drugs.com/nortriptyline.html.

[9] Temazepam is used to treat insomnia symptoms, such as trouble falling or staying asleep. http://www.drugs.com/temazepam.html

[10]  Amitriptyline is a tricyclic antidepressant.  Amitriptyline is used to treat symptoms of depression. http://www.drugs.com/amitriptyline.html.

[11]  Vicodin contains a combination of acetaminophen and hydrocodone.  Vicodin is used to relieve moderate to severe pain.  http://www.drugs.com/vicodin.html.

[12] Fluoxetine is used to treat major depressive disorder, bulimia nervosa (an eating disorder) obsessive-compulsive disorder, panic disorder, and premenstrual dysphoric disorder (PMDD). http://www.drugs.com/fluoxetine.html

[13]  Cymbalta is used to treat major depressive disorder and general anxiety disorder.  Cymbalta is also used to treat fibromyalgia (a chronic pain disorder), or chronic muscle or joint pain (such as low back pain and osteoarthritis pain).  http://www.drugs.com/cymbalta.html.

[14]  Effexor is used to treat major depressive disorder, anxiety, and panic disorder. http://www.drugs.com/effexor.html.

for Disability that their healthcare providers are not trained to perform functional assessments

for disability determination. [Tr. 230-232.]

      C.      **Northern New Mexico Psychiatry - Anne Ortiz, M.D.**

      On March 8, 2010, Plaintiff was evaluated by Anne Ortiz, M.D. [Tr. 225-228.]  Plaintiff

reported her depression and fibromyalgia, and stated that she is "always in pain with my

fibromyalgia and I don't want to be around anyone, not even my grandson."  Plaintiff also told

Dr. Ortiz that she was able to care for herself, shop, cook, clean, bend, stoop, crouch, sit, stand,

walk short and long distances, as well as reach, handle and grasp, lifting up to 20 lbs., 'except for

some days that lifting things are a problem.'"  [Id.]  Dr. Ortiz performed a mental status exam

and assessed Plaintiff as follows:

| | |
|---|---|
| Axis I: | Major Depression Recurrent Mild |
| Axis II: | Deferred |
| Axis III: | Fibromyalgia |
| Axis IV: | Chronic symptoms of Depression, Employment, Social Support |
| Axis V: | Current GAF: 70[15] |

[Tr. 225.] Dr. Ortiz stated that Plaintiff would greatly benefit from psychotherapy for her

depression, and that if she indeed had fibromyalgia, she would benefit from stretching, physical

therapy, exercise, massage, acupuncture, sauna, whirlpool, hot pads/hot gels and NSAIDS.

[Tr. 228.]

---

[15]  Individuals with a GAF between 61 and 70 have some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.

**D.**    **New Mexico Disability Determination Services - Kimberlie Keller, DO**

On April 13, 2010, Plaintiff was evaluated by Kimberlie Keller, DO, for the purpose of providing information to determine disability. [Tr. 234-237.]  Plaintiff reported depression, post traumatic stress disorder and fibromyalgia, and stated that she has "full body pain most noticeably in her arms, buttocks, down the legs. . . .  She also gets poor sleep.  Her pain affects her daily and often makes it difficult for her to get around and perform the things that she needs to do during the day." [Tr. 234.]  Plaintiff also told DO Keller that:

> [S]he was essentially caring for her grandchildren, however she feels she is not able to do that because she is unable to lift.  She has no problems getting dressed.  She can stand for about 10 minutes at a time, walk about 15 minutes on flat level ground, she can sit for approximately 30 minutes at a time, she can lift 5 to 10 pounds, however she is not sure, she has not tried lifting.  She can drive without difficulty. She is able to do her household chores, however it does take her more time than before.

[Tr. 235.]

DO Keller performed a physical examination, including range of motion performed on Plaintiff's joints, and reported as follows:

General:        She is a pleasant female in no acute distress, she has no significant trouble getting on and off the exam table, with ambulation, getting up and out of the chair or removing her shoes and socks.  She can hear me at a normal speech level. Her speech is understandable.

Spine/Extremities:   Radial pulses are 2+ distally bilaterally in the upper and lower extremities.  Fee: dorsalis pedis purses at 2+ and equal bilaterally.  She has normal gait.  Grip is 5/5 equal bilaterally.

Range of motion is performed for the following joints:

1.    Elbow: Normal flexion, however she does have tenderness to palpation bilaterally over the antecubital area as well as the lateral epicondyle of each elbow, more in the muscle area than the actual bone.

8

2.     Shoulder: Normal range of motion, however she does have some pain in her triceps as well as biceps while she goes through the ranges of motion.

3.     Cervical is diminished in extension, normal flexion, normal lateral flexion, rotation is slightly mdd at 80 degrees bilaterally.

4.     Lumbar spine flexion is normal range of motion.

5.     Hip: Normal range of motion.

6.     Knee: Normal range of motion.

Straight leg raise is negative in the seated and supine position.

She was able to walk on her heels and toes and transfer between the two without difficulty, however she does have some pain.  She is able to squat fully with discomfort.

[Tr. 236.]

DO Keller had the following impression:

1.     Fibromyalgia.  The patient does have sensitivity to palpation, however was able to perform everything during the functional exam today.  Mild limitation is noted for pain and mild restriction of range of motion.

2.     Posttraumatic stress disorder (PTSD).  No significant functional limitation is noted and a full psychiatric evaluation was not performed today.

3.     Depression.  No significant functional limitation is noted on exam today.

[Id.]

**E.     Psychiatric Review Technique - Ralph Robinowitz, Ph.D.**

On May 3, 2010, State agency medical consultant Ralph Robinowitz, Ph.D prepared a

Psychiatric Review Technique based on his review of Plaintiff's medical records. [Tr. 238-251.]

Dr. Robinowitz determined that Plaintiff's depression was not severe and noted as follows:

Claimant is a 47 y/o female alleging fibromyalgia, PTSD, and severe depression. 3/08/10 CE: Gait normal.  Folstein Mental Status Examination: 27 out of 30.  Affect full, thought process was linear, judgment fair and claimant capable of handling awarded benefits, thought content showed no auditory, visual hallucinations and no

delusions or suicidal ideation.  Lastly, GAF level was 70, with mild symptoms.
Although claimant states that she has problems getting along with others because of
her pain, she marked no difficulty with completing task, concentration,
understanding, following instructions or getting along with others.  Allegations are
partially credible, clmt is able to function without significant interference from
psychological factors.

[Tr. 250.] Dr. Robinowitz assessed Plaintiff's functional limitations as mild. [Tr. 248.]

### F.    Case Analysis - Mary Lanette Rees, M.D.

On May 5, 2010, State agency medical consultant Mary Lanette Rees, M.D., prepared a

Case Analysis based on her review of Plaintiff's medical records. [Tr. 252.] Addressing

Plaintiff's fibromyalgia, Dr. Rees noted  Plaintiff's medical records indicating her complaints of

pain. [Id.] However, she stated that Plaintiff's exams were normal, except for her obesity;

Plaintiff's labs were normal, including a rheumatology work up; and that Plaintiff's pain did not

respond to multiple medications. [Id.] Dr. Rees noted:

> IMCE 04/10 indicates she has normal gait, pulses at 2+ BLE, BUE, and grip is 5/5
> and equal bilaterally.  Although clmt presents some tenderness to palpation in 2 of
> the 18 tender points for fibromyalgia; ROM in the elbow, shoulder, lumbar spine, hip
> and knee were normal.  SLR is negative and clmt was able to walk on her heels and
> toes without difficulty.  Motor, sensory, DTRs intact.

[Id.]  Dr. Rees concluded that  "[t]here is no documentation of the positive trigger points

required for the diagnosis of fibromyalgia." [Id.]

### ANALYSIS

Plaintiff asks this Court to address three issues on review.  First, that the ALJ erred in not

finding Plaintiff's fibromyalgia to be a severe impairment. [Doc. 20 at 3.]  Second, the ALJ

failed to properly analyze Plaintiff's credibility. [Id. at 10.]   And third, that the ALJ erred in not

considering Plaintiff's limitations in interacting with supervisors.

A.    **Step Two Findings**

Plaintiff argues that the ALJ erred at step two in finding that Plaintiff's fibromyalgia was nonsevere.  The burden of proof at step two is on the Plaintiff.  *See Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis).  A claimant's showing at step two that he or she has a severe impairment has been described as "*de minimis*."  *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997); see *Williams v. Bowen*, 844 F.2d 748, 751 910th Cir. 1988)("*de minimis* showing of medical severity").  A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities.  *Williams*, 844 F.2d at 751.  However, the claimant must show more than the mere presence of a condition or ailment.  If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity.  Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work.  *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).  A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled.  20 C.F.R. § 404.1512(c), § 416.912(c).

Here, the ALJ found that Plaintiff had minimal restrictions in her overall daily functioning due to fibromyalgia.  These findings match the findings of Dr. Anne Ortiz and DO Kimberlie Keller, both of whom examined Plaintiff and found that she only had mild limitations and mild restriction in her range of motion as the result of her complaints about pain. [Tr. 228, 236.] They both further documented that Plaintiff reported being able to care for herself, shop,

cook, clean, bend, stoop, crouch, sit, stand for 10 minutes at a time, walk about 15 minutes on flat level ground, sit for approximately 30 minutes at a time, as well as reach, handle and grasp, and lift anywhere from 5 to 20 pounds. [Id.]  In addition, DO Keller observed that Plaintiff showed no difficulty walking, getting on and off the exam table, getting up and out of a chair, or removing her socks and shoes.  [Tr. 235.]  Plaintiff's treating physician also stated she could not state that Plaintiff was unable to work as a result of her pain.  Finally, Dr. Mary Rees concluded that there was no documentation in Plaintiff's medical records of the positive trigger points required for the diagnosis of fibromyalgia. [Tr. 252.]

Even assuming Plaintiff met her burden of proving that her fibromyalgia was severe, the issue before the Court would be whether it is reversible error if the ALJ fails to list all the severe impairments at step two.  The Tenth Circuit has held that once an ALJ has found that a claimant has one severe impairment, a failure to designate another as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  *Brescia v. Astrue*, 287 Fed.Appx. 626, 628-29 (10th Cir. 2008).  In *Hill v. Astrue*, 289 Fed. Appx. 289, 291-292 (10th Cir. 2008), the Court held that once the ALJ finds that the claimant has any severe impairment, she has satisfied the analysis for purposes of step two.  The ALJ's failure to find that additional alleged impairments are also severe is not in itself cause for reversal.  However, the ALJ, in determining Plaintiff's RFC, must consider the effects of all of the claimant's medically determinable impairments, both those she deems "severe" and those "not severe."

In making her RFC findings, the ALJ stated that she considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective

medical evidence and other evidence; the ALJ also stated that she considered the opinion evidence. [Tr. 13.]   While Plaintiff points to subjective complaints to support her claim that fibromyalgia would have more than a minimal impact on her ability to work or constitute a severe impairment, the objective medical evidence indicates that Plaintiff's functional limitations due to pain are mild. [Tr. 15.] Furthermore, Plaintiff's reliance on *Brosnahan v. Barnhart*, 336 F.3d 671 (8th Cir. 2003) and *Moore v. Barnhart*, 114 Fed. Appx. 983, 2004 WL 2634571 (C.A. 10 (Kan.)) to suggest a fibromylagia diagnosis is based strictly on subjective complaints is misplaced.  In each of those cases, the subjective complaints of pain reported by each of the claimants were coupled with significant objective findings; *i.e.*, consistent, reproducible and multiple tender points consistent with a fibromyalgia diagnosis.  *Brosnahan*, 336 F.3d at 673-74; *Moore*, 114 Fed.Appx. at 986-987.  Here, DO Keller evaluated Plaintiff solely for the purpose of determining disability and reported that although Plaintiff had some sensitivity to palpation, she was able to perform everything during the functional exam and only had mild limitation due her pain.  And while Plaintiff's treating physician indicated Plaintiff's pain could likely be due to fibromyalgia, all objective findings were normal.  Finally, Dr. Rees specifically noted that Plaintiff's medical records did not contain documentation of the positive trigger points required for the diagnosis of fibromyalgia.  In light of the fact that the ALJ found other severe impairments at step two, considered all symptoms and evidence when making her RFC findings for the Plaintiff, considered all of Plaintiff's impairments, including non-severe impairments,  and because the Plaintiff has failed to cite to any objective medical evidence that Plaintiff has limitations from these impairments that were not included in the ALJ's RFC findings, the Court finds that the ALJ did not err in her consideration of Plaintiff's fibromyalgia.

B.    __Credibility__

Plaintiff next argues that the ALJ failed to properly assess Plaintiff's credibility because she relied on boilerplate language and failed to consider the entire record.  The ALJ is "the individual optimally positioned to observe and assess witness credibility."  *Casias v. Sec'y of Health & Human Servs*., 933 F.2d 799, 801 (10th Cir. 1991).  "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determination when supported by substantial evidence."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)(quotation omitted).  When determining the credibility of testimony about symptoms, the ALJ should consider factors such as the nature of daily activities, the levels of medication and their effectiveness, the frequency of medical contacts, and the consistency of nonmedical testimony with objective medical evidence.  *Kepler*, 68 F.3d at 390-91 (10th Cir. 1995); *Luna v. Bowen*, 834 F.2d 161, 165-166 (10th Cir. 1987); Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (stating that credibility determinations cannot be based on "intangible or intuitive" reasons, but "must be grounded in the evidence and articulated in the determination or decision").  This process, however, "does not require a formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 910th Cir. 2000).  Here, the ALJ notes that she "must make a finding on the credibility of the statements based on a consideration of the entire case record," and stated that "[b]ased on the entire record including my observation of the claimant at the hearing, I cannot find her allegations fully credible."  [Tr. 14-15.]  In support of that finding, the ALJ reviewed the opinion evidence of Dr. Anne Ortiz and DO Kimberlie Keller that indicates Plaintiff has mild symptoms in social and occupational functioning, and minimal functional limitations due to pain.  DO Keller observed that Plaintiff had no difficulty with walking, getting on and off the exam table, getting up and out of the chair, or removing her shoes and socks.  All

14

of Plaintiff's physical exams with Dr. Mercado were normal, except for obesity.  The ALJ further considered Plaintiff's daily activities as reported to both Dr. Ortiz and DO Keller that included being able to care for her personal needs, shopping, cooking, cleaning, bending, stooping, crouching, sitting for 30 minutes at a time, standing for 10 minutes at a time, walking about 15 minutes on flat level ground, and lifting between 5 and 20 pounds.   Plaintiff testified at the hearing that despite her complaints of pain and her mental impairments she makes breakfast for her grandchildren, helps her daughter with dishes, does laundry and light housework, and goes to church every Sunday where she gets along well with her fellow parishioners.  [Tr. 38-43.]  Because the ALJ's credibility evaluation is supported by substantial evidence, it is not this Court's prerogative to disturb it.

> C.    **Step 4 Findings**

Lastly, Plaintiff argues that the ALJ's RFC finding lacks an analysis at step four of Plaintiff's ability to interact with supervisors, as required by the regulations, and in light of the ALJ's finding that Plaintiff is moderately limited in social functioning.  Plaintiff also asserts that the ALJ ignored evidence regarding Plaintiff's anxiety and isolation.  Step four of the sequential analysis is comprised of three phases.  In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity.  *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).  In the second phase, she must determine the physical and mental demands of the claimant's past relevant work.  *Id.*  In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one.  *Id.*  Plaintiff's argument here involves only phase one of the step four analysis.

In determining a claimant's mental abilities, the ALJ should "first assess the nature and extent of [the claimant's] mental limitations and restrictions and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(c). The ALJ is required to consider all of the claimant's impairments, including impairments that are not severe. *See* 20 C.F.R. §§ 404.1545(d) , 416.945; *see also Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "[T]he ALJ must make specific [RFC] findings." *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). And those findings "must be supported by substantial evidence." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). The RFC assessment must include a narrative discussion as follows:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual case perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistences or ambiguities in the evidence in the case record were considered and resolved.
>
> . . .
>
> The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

SSR 96-8p, 1996 WL 374184, at *7.

Here, the ALJ's analysis meets these standards. In making her RFC determination, the ALJ considered the claimant's impairments, and made specific findings for each that were supported by substantial evidence. The ALJ provided a narrative discussion describing how the

evidence supports her conclusions, and cited to specific medical facts as well as nonmedical

evidence.  The ALJ concluded as follows:

> As for the opinion evidence, I note that no treating or examining physician has offered the opinion that the claimant is disabled.  Significant weight is therefore granted to the opinions of the State Agency medical consultants who completed mental and physical residual functional capacity assessments and also found the claimant was capable of at least a limited range of light work.

> Accordingly, I find that the claimant has retained the residual functional capacity to perform a limited range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).  Specifically, the claimant is limited to light work, but must alternate between sitting and standing every 30 minutes, no public contact, only superficial contact with co-workers and no working around hazardous machinery.

[Tr. 16.]  Here, the ALJ made express findings regarding Plaintiff's mental RFC by

incorporating no public contact, only superficial contact with co-workers, and no working

around hazardous machinery.  While Plaintiff is correct that the ALJ did not specifically address

Plaintiff's ability to interact with supervisors, the regulations do not require the ALJ address

every possible limitation that may reduce her ability to work, particularly when the record does

not support Plaintiff's inability to interact with supervisors.

20 C.F.R. § 404.1545(c) states as follows:

> Mental abilities.  When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, *such as* limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

(Emphasis added.)  Furthermore, moderate difficulties in social functioning *could* indicate

conflicts with peers or co-workers, but not necessarily so.[16]  Here, Plaintiff indicated in her

---

[16]  Individuals with a GAF between 51 and 60 have some moderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning

Adult Function Report that she gets along "OK" with authority figures and has never been fired or laid off from a job because of problems getting along with other people. [Tr. 165.] Thus, there is nothing in the record to support that Plaintiff's ability to get along with supervisors is limited.

With respect to Plaintiff's anxiety and isolation, the objective evidence is predominately silent with respect to both.  While the ALJ noted Plaintiff's subjective complaint to Dr. Ortiz that "she does not like to be around people," the objective evidence supports that Plaintiff has only mild functional limitations as the result of her mental impairments.  Dr. Ortiz assessed Plaintiff with a GAF of 70 indicating that she is generally functioning pretty well; DO Keller reported no functional limitation due to Plaintiff's depression or posttraumatic stress disorder; and Dr. Robinowitz's Psychiatric Review Technique indicated that Plaintiff had only mild functional limitations in her activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace due to her depression.  [Tr. 225, 237, 248.]  None of these opinions generally or specifically address an issue of anxiety because anxiety was never reported to them by Plaintiff.  The only record that indicates Plaintiff potentially had "serious" impairments in social and occupational functioning is from UNM Behavioral Health wherein Plaintiff's chief complaint involved her verbally and physically abusive husband. [Tr. 277.] That said, there is no mention of anxiety or isolation in DO Luley's notes, and Plaintiff testified at the hearing that her depression and anxiety was "a lot better" since she left her husband. [Tr. 58.] Finally, Plaintiff reported to DO Keller that "[s]he feels that she occasionally has depression that is severe, otherwise it does not affect her.  She does take medications which seem to help." [Tr. 234.] Thus, in spite of the objective evidence to the contrary, the ALJ did in fact take into

(e.g., few friends, conflicts with peers or co-workers).

account Plaintiff's subjective complaints regarding isolation and incorporated into her RFC no public contact and only superficial contact with co-workers.

For all of these reasons, Plaintiff's argument that the ALJ failed to conduct a proper analysis at step four regarding Plaintiff's ability to interact with supervisors and failed to incorporate Plaintiff's anxiety and isolation is not supported by substantial evidence.  For these same reasons, the ALJ's hypothetical to the Vocational Expert appropriately incorporated Plaintiff's moderate limitations in social functioning.

<u>CONCLUSION</u>

For all of the foregoing reasons, this Court finds that the ALJ's determination is supported by substantial evidence and that correct legal standards were applied.

 **IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Decision [Doc. 20] is **DENIED**.

 **IT IS FURTHER ORDERED** that Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.


_____
**ALAN C. TORGERSON**
**United States Magistrate Judge,**
**Presiding by Consent**